**NATIONAL PACKING COMPANY, Inc.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 7813.

United States Court of Appeals
Tenth Circuit.

Nov. 12, 1965.

---

Edward A. Smith, Kansas City, Mo., (George Schwegler, Jr., Howard L. Swartzman, and Wayne F. Caskey, Jr., Kansas City, Mo., with him on the brief), for petitioner.

Melvin Pollack, Washington, D. C., (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Joseph C. Thackery, Washington, D. C., with him on the brief), for respondent.

Before PHILLIPS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

National Packing Company, Inc., (Company) petitions for review of an order of the National Labor Relations Board (Board) and the Board seeks enforcement of the order.[1] The Board action was taken on the complaint of a minority group of the Company's employees (Charging Parties) that the Company had engaged in unfair labor practices. The Board sustained the examiner's findings that the Company had violated § 8(a) (1) of the National Labor Relations Act[2] by discharging a

1. The decision and order of the Board are reported at 147 NLRB 446.

2. 29 U.S.C. § 158(a) (1).

group of employees because they had participated in a protected concerted activity, required the reinstatement with pay of 18 employees, and entered the usual compliance order.

■ In June, 1962, the Company became engaged in the business of slaughtering and processing meat at Kansas City, Kansas. In August the United Packinghouse, Food and Allied Workers, (AFL–CIO), (Union) petitioned the Board for certification as the collective-bargaining representative of the Company's production and maintenance employees. A subsequent consent election went against the Union and no objections were filed with respect thereto. A few weeks later some of the production employees walked out in protest against working conditions. The difficulties were temporarily resolved. On April 18, 1963, about 20 employees, principally those on the kill floor, walked out in protest against the failure of the Company to come forward with a pay raise which was allegedly promised.[3] The strikers set up a picket line apparently with the help and cooperation of a Union representative. The Company discharged the strikers and later refused reinstatement. The examiner found, and the Board agreed, that the reason for the discharge and refusal to reinstate was the protected concerted activity in which the Charging Parties had engaged. Substantial evidence sustains this finding.

In defense of the unfair labor practice charge the Company asserts that the Charging Parties forfeited the protec-

tion of the Act because they engaged in conduct which violated § 8(b) (7) (B),[4] and which sought to compel the Company to violate § 8(a) (1) and (2).[5] The Board held that the motivation for the discharge controlled and that the asserted defenses were unavailable.

Section 8(b) (7) (B) declares that it shall be an unfair labor practice for a labor organization to picket an employer with the object of forcing the employer to recognize or bargain with a labor organization when within the preceding 12 months a valid election has been conducted under § 9(c).[6] The fact that picketing took place within 12 months of a valid election is not disputed. If the Charging Parties who struck and picketed were a labor organization and if their purpose was to force the Company to recognize them or the Union as the bargaining representative of the employees, a violation of § 8(b) (7) (B) occurred. Also, if the picketing had an organizational or recognitional purpose, the additional question arises of whether the Charging Parties, who represented about 25% of all employees, sought to compel the Company to bargain with a minority group in violation of §§ 8(a) (1) and (2).[7]

■ We are concerned with conduct which is claimed to be a direct violation of the Act, rather than with conduct which is merely unprotected by the Act. When conduct is unprotected and not unlawful, motivation for a discharge may be a determining factor. The decided cases are not particularly helpful. In

---

3. The examiner found that on this date the Company employed 64 production and 10 maintenance workers.

4. 29 U.S.C. § 158(b) (7) (B).

5. 29 U.S.C. § 158(a) (1) and (2).

6. The material provisions of § 8(b) are: "It shall be an unfair labor practice for a labor organization or its agents * * * (7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his em-

ployees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees: * * * (B) where within the preceding twelve months a valid election under section 159(c) of this title has been conducted * * *."

7. See International Ladies' Garment Workers' Union, AFL–CIO v. National Labor Relations Board, 366 U.S. 731, 733, 81 S.Ct. 1603, 6 L.Ed.2d 762.

National Labor Relations Board v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298, the Supreme Court pointed out that it was not concerned with an unlawful activity. Southern Steamship Co. v. National Labor Relations Board, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246, held that the Board could not order reinstatement of employees who engaged in criminal misconduct, mutiny on shipboard. The decision in National Labor Relations Board v. Coal Creek Coal Co., 10 Cir., 204 F.2d 579, 582–583, contrasted protected activities with unprotected activities—not with unlawful activities. In United Furniture Workers of America, AFL–CIO v. National Labor Relations Board, 118 U.S. App.D.C. 350, 336 F.2d 738, 742, the real reason for discharge was participation in an unlawful strike and consideration of employer's motive was unnecessary. National Labor Relations Board v. U. S. Sonics Corp., 1 Cir., 312 F.2d 610, does not discuss the question of motive but upholds a discharge for a strike in support of an unlawful refusal to bargain even though the employer said the reason for discharge was economic.

The Board held in MacKay Radio and Telegraph Company, Inc., 96 NLRB 740, 743, that "the employees who participated in the *unlawful* strike of the kind herein found may not invoke the protection of the Act because they were denied permanent reinstatement at the end of that strike, even though the respondents may have failed to assert the illegality of the strike as the basis for denying reinstatement to such strikers." This holding is weakened by Union Twist Drill Co., 124 NLRB 1143, 1145–1146, which limits MacKay to the facts there considered.

■■ In our opinion the basic question is not the motivation for the discharge but rather the right of persons whose activities are proscribed by the Act to invoke the Act for their own benefit. If the picketing of the Charging Parties violated § 8(b) (7) (B), they should not be able to use the Act to compel reinstatement after the discharge which followed the picketing. Section 10(c) [8] empowers the Board to take such action, including reinstatement, "as will effectuate the policies" of the Act. A grant of reinstatement with pay to employees who have violated the Act does not effectuate the policies of the Act. The Board should have considered and determined the defenses raised by the Company.

Enforcement is denied and the case is remanded to the Board for further consideration in accord with this opinion.