The judgment of the district court will be affirmed.

**NATIONAL PACKING COMPANY,**
Inc., Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 8839.

United States Court of Appeals
Tenth Circuit.

May 23, 1967.

Edward A. Smith, Kansas City, Mo. (George Schwegler, Jr., Wayne F. Caskey, Jr., and Smith, Schwegler & Swartzman, Kansas City, Mo., and Holme, Roberts & Owen, Denver, Colo., of counsel, were with him on the brief), for petitioner.

Warren Davison, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Joseph C. Thackery, Atty., N. L. R. B., were with him on the brief), for respondent.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This case is before us for the second time. On the first appearance, National Packing Company v. National Labor Relations Board, 10 Cir., 352 F.2d 482, we held that the evidence sustained a finding that the Company had violated § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), by discharging a group of employees for participation in a protected concerted activity, an economic strike. We declined to enforce the usual order requiring reinstatement with backpay because the Board had not considered the Company's defense that the strikers were not entitled to the protection of the Act because they had engaged in an activity proscribed by the Act, recognitional picketing within 12 months of a valid election. We remanded the case to the Board for determination of the applicability of the defense. Without taking additional evidence, the Board made a supplemental decision and order [1] holding that no unlawful picketing had occurred. The Company petitions for review of that order and the Board has filed a cross-application for enforcement.

The Company is in the business of slaughtering cattle and processing meat at Kansas City, Kansas. During the pertinent period it had about 64 production and 10 maintenance employees. We are concerned with a group of 17 employees made up principally of those on the kill floor and referred to as the Charging Parties because they brought the unfair labor practice charges. In the fall of 1962, the United Packinghouse, Food and Allied Workers, AFL-

---

[1]. National Packing Co., Inc., 158 N.L.R.B. No. 142.

CIO, petitioned for certification as the collective-bargaining representative of the employees. In these proceedings the Union acted through Felix Hayes, its organizer. At an election held November 1, 1962, the Union lost. No question is raised on the validity of the election.

After a 20-minute work stoppage on November 29, about 20 of the production employees walked out on November 30 to protest dangerous working conditions that had caused an injury to an employee. The Company then shut down the plant for several days. The employees set up a committee which met with the Company to discuss wages and working conditions. Nothing was accomplished and, at the suggestion of the Company, the committee was dissolved. A second committee was then formed. After several meetings, the president of the Company said there would be no more meetings. Although the record is not clear, the committee members thought the Company had promised a three-step wage increase with the first step to be reflected in the April 17 paychecks.

The April 17 paychecks did not include the increase. When complaint was made, the assistant general manager said that he had heard nothing of the promise. On the next day, a group composed mostly of men from the kill floor struck and began picketing. The strikers told a supervisor that the main reason for their action was that they did not get the promised raise. The next day the supervisor told them that they would have the raise if they went back to work. They refused and said that they "wanted a few things straightened up"; that they wanted Organizer Hayes of the Packinghouse Workers to "talk for them"; that they had been "having nothing but promises"; and that they desired "a better kill standard" and "something in

writing." Shortly thereafter the strikers were all discharged.

Hayes talked with the strikers and furnished banners, none of which bore the union name. The signs used by the picketers read "On Strike" and "National Packing Company pays substandard wages." There was no distribution of leaflets or other materials. The strikers told Hayes that they wanted him to negotiate with the Company for them. He called a supervisor and asked permission to "come in and represent the men." This request was denied. The conditions surrounding the picketing were of such a disturbing character that a Kansas state court entered an injunction against acts of violence in connection therewith.

The pertinent provisions on picketing are contained in the Labor-Management Reporting and Disclosure Act of 1959.[2] The Supreme Court said with reference thereto [National Labor Relations Board v. Drivers, Chauffeurs, Helpers Local Union (Curtis Bros. Case), 362 U.S. 274, 291, 80 S.Ct. 706, 716, 4 L.Ed.2d 710]:

> "That Act goes beyond the Taft-Hartley Act to legislate a comprehensive code governing organizational strikes and picketing and draws no distinction between 'organizational' and 'recognitional' picketing."

Picketing becomes an unfair labor practice (1) when done by a labor organization (2) within 12 months after a valid election (3) for the purpose of "forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees."[3] In the instant case, the picketing took place within 12 months of a valid election. We are concerned only with the other two elements.

The Board assumed that the Charging Parties were a labor organization and

**2.** Act of Sept. 14, 1959, Pub.L. 86–257, 73 Stat. 519, 542–543.

**3.** The material provisions of § 8(b) (7) (B), 29 U.S.C. § 158(b) (7) (B), are: "It shall be an unfair labor practice for a labor organization or its agents—(7) to picket * * * any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, * * * (B) where within the preceding twelve months a valid election under section § 9(c) of this title has been conducted * * *."

confined its consideration to whether the picketing had an organizational or recognitional object. An assumption is not a finding. We must determine if the admitted facts establish the existence of a labor organization.

Section 2(5), 29 U.S.C. § 152(5), defines "labor organization" thus:

"* * * any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

■ Although the Charging Parties did not have the organic structure of a typical labor union, they were a group which acted in unison to obtain mutual objectives by combined efforts. They existed and acted to deal with the Company in regard to labor disputes, rates of pay, and working conditions. This brings them within the statutory definition of labor organization.

■ The controlling issue is whether the Charging Parties picketed to force the Company "to recognize or bargain" with them. Here it should be noted that in National Labor Relations Board v. Cabot Carbon Co., 360 U.S. 203, 211, 79 S.Ct. 1015, 3 L.Ed.2d 1175, the Supreme Court said that the term "dealing with" as used in the definition section was not synonymous with the more limited term "bargaining with." Hence, the conclusion that the Charging Parties were a labor organization does not of itself establish a violation of § 8(b) (7) where the reference is to "recognize or bargain with."

■ The Board found that the strike was not for organizational purposes; that the Packinghouse Workers' business agent "was on the scene" because of "his experience in such matters"; and that the picketing was a "spontaneous protest against Respondent's broken promises." It also found that "while the strikers indicated a desire for 'something in writing' we do not view this as an attempt to establish a continuing relationship, but only as an attempt to bind the Respondent to its promises." These findings are based on substantial evidence or reasonable references therefrom and, considering the record in its entirety, we must accept them. Although the Board made no specific finding on the point, the record conclusively shows that the picketers wanted "something in writing" to cover wages and conditions of employment. The examiner specifically found:

"It appears from the testimony of several of the witnesses that the strikers refused to return to work, even after the raise was offered, because they wanted other terms and conditions of employment changed and 'something in writing' setting forth the changes."

■ The issue is thus narrowed to a determination of whether, as a matter of law, a violation of § 8(b) (7) occurs when the object of recognition and bargaining does not encompass an effort to establish a "continuing relationship". The statute proscribes picketing with "an object" to force an employer "to recognize or bargain." In our opinion this means that a violation occurs if any object of the picketing is to force recognition or bargaining.[4] Indeed, the Board has so held.[5]

4. See Centralia Building and Construction Trades Council v. National Labor Relations Board, 124 U.S.App.D.C. 212, 363 F.2d 699, 701.

5. In Warehouse and Mail Order Employees Union, Local 743, 144 N.L.R.B. 888, 892, it was held: "Assuming *arguendo* that one purpose of the picketing was to protest alleged company unfair labor prac-

tices, this cannot serve as a defense since it need be established only that *an* object of the picketing be one proscribed by the Act." The decision in Hoisting and Portable Engineers Local Union 101, 140 N.L.R.B. 1175, 1178, says: "* * *. we nevertheless hold that forcing or requiring an employer to recognize and bargain with a labor organization as the rep-

The picketing here was not only to protest an employer's unfair labor practices and broken promises but also to come to terms on wages and working conditions and to obtain the recognition of those terms in writing. Although the object may not have been to "negotiate an overall formal collective-bargaining agreement" as the Board found, the picketing had the purpose of forcing the Company to agree in writing on the matters in dispute. In our opinion, this is an effort to force bargaining within the purview of the statute.

This result may not be avoided by a finding of no attempt to establish a "continuing relationship." The statute refers to bargaining—not to bargaining for any period of time. The Board would write into the statute a condition that is not included within its specific language. Such an effort to restrict the statute is not helped by the argument that the picketing provisions must be construed "broadly and concomitantly," with the provisions of § 7 relating to collective bargaining and the provisions of § 13 assuring the right to strike. The point is that Congress has declared certain types of picketing to be unfair labor practices and we are concerned with the single issue of whether the picketing here is forbidden. The Charging Parties had the right to strike but they did not have the right to picket in violation of the Act. We are convinced that their actions were prohibited by § 8(b) (7) (B).

In our former opinion in this case,[6] we held that if the Charging Parties violated the Act by forbidden picketing, they were not entitled to invoke the Act to compel reinstatement. We adhere to that decision. We now hold that unlawful picketing occurred. Accordingly, enforcement is denied and the order of the Board is set aside and held for naught.

---

resentative of his employees is an object within the scope of Section 8(b) (7), even though exclusive recognition for all employees in an appropriate unit is not also being sought."

6. 352 F.2d 482, 485.