NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

KNITGOODS WORKERS UNION LO-CAL 155, INTERNATIONAL LADIES GARMENT WORKERS, AFL–CIO, Respondent.

No. 123, Docket 32351.

United States Court of Appeals Second Circuit.

Argued Oct. 8, 1968.

Decided Nov. 14, 1968.

Jerome Weinstein, N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, N.L.R.B., Washington, D. C., on brief), for petitioner.

Marshall L. Rosenberg, New York City (Lieberman, Katz & Aronson and Vinson C. Aronson, New York City, on brief), for respondent.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

ANDERSON, Circuit Judge:

This is a petition by the National Labor Relations Board seeking enforcement of its order issued on October 13, 1967 against respondent, Knitgoods Workers Union Local 155, for unlawful picketing in violation of § 8(b) (7) (B) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (7) (B).

Boulevard Knitwear Corp. (the Company) was engaged in the manufacture, sale and distribution of ladies' sweaters and related items. Before the occurrence of the events hereinafter described, the Company, operating as a nonunion shop, performed 90 to 100 per cent of its work for two jobbers, Bobbie Brooks and Russ Toggs.

On October 10, 1966, the Union began to picket the Company's plant with signs which read:

BOULEVARD KNITWEAR CORP.
UNFAIR TO ORGANIZED LABOR
KNITGOODS WORKERS' UNION LOCAL 155
AFFILIATED WITH THE
INTERNATIONAL LADIES GARMENT WORKERS UNION
AFL–CIO

Union authorization cards were distributed to Company employees as they arrived for work. That same morning, two organizers for the Local, Jacobson and Lewis, visited Epstein, the Company's secretary-treasurer, and Rubinstein, its president. From the conflicting testimony about what happened at that meeting, the Trial Examiner, crediting the account given by Epstein and Rubinstein, found that, among other things, the two organizers asked why the Company did not sign a union contract, to which the Company's officers replied that the employees did not want a union. The organizers then said that the Company would have to join the Union and that they would see them a few days later. From uncontradicted evidence, the Trial Examiner found that Jacobson returned a week later with the threat that unless the Company joined up, he would have Bobbie Brooks, which was then under Union contract, take away all of its work from the Company. Bobbie Brooks, under Union pressure, did just that in early November, and Russ Toggs, for a like reason, followed suit shortly thereafter. In addition, truckers refused to cross the picket lines which remained in continuous operation. As a result, by late November, the Company was forced to cease all operations.

In the meantime, the Company petitioned the Board for a representation

**390**

election. The Union, in an effort to avoid that election, wrote to the Board on November 16, 1966 to deny that its picketing had either a recognitional or organizational object, as defined in § 8(b) (7) of the Act. The Regional Director rejected this disclaimer and ordered an election in which the employees unanimously voted against the Union. Although the Union was notified by December 12th that it had lost the election, it continued to picket until December 19th.

On December 20, 1966, the Union notified both the Board's Regional Office and the Company that it would suspend its picketing from December 20 to December 26 "to disassociate the resumed picketing from the prior picketing in order to avoid any misunderstanding as to the object of the picketing when resumed." The new picketing would only give publicity to the Company's employment conditions. Accordingly, on December 27, the pickets returned with these signs:

EMPLOYMENT CONDITIONS OF
BOULEVARD KNITWEAR CORPORATION
ARE BELOW UNION CONDITIONS IN THIS
AREA.
KNITGOODS WORKERS UNION LOCAL 155,
AFFILIATED WITH
INTERNATIONAL LADIES GARMENT WORK-
ERS UNION,
AFL–CIO.

Although the Company's general operations remained closed, a few employees returned to work on samples in January, 1967. They were accosted by one of the pickets, Laviano, and urged to join the Union. He advised them that one establishment was picketed for nine years before "we took them over" and that this Company "would have to be Union too."

On the basis of these facts the Trial Examiner and the Board concluded that the Union had violated § 8(b) (7) (B) of the Act which makes it an unfair labor practice for a union to engage in recognitional picketing of a company where there has been a valid election

within the preceding twelve months. The Union was ordered to cease and desist from recognitional picketing for a period of one year. In this petition for enforcement the principal issue is whether the record as a whole justifies the Board's findings and order with respect to both periods of post-election picketing.

The Union maintains that the actual purpose of such picketing, especially that after December 27, 1966, was not recognitional but solely informational, which, as such, is clearly permissible under the Act, even after a valid election, Penello, for and on Behalf of N.L.R.B. v. Retail Store Employees Local Union No. 692, Retail Clerks Internat'l Assoc., AFL–CIO, 188 F.Supp. 192, 200 (D.Md.1960) aff'd 287 F.2d 509 (4 Cir. 1961). On the other hand, if one of the Union's purposes is recognition, the picketing violates § 8(b) (7). N.L.R.B. v. Local 182, Internat'l Brotherhood of Teamsters, 314 F.2d 53, 58–59 (2 Cir. 1963); National Packing Company v. NLRB, 377 F.2d 800, 803 (10 Cir. 1967). The Board's determination of the Union's objective is a question of fact, N.L.R.B. v. Local 182, supra, 314 F.2d at 58, which must be affirmed if supported by substantial evidence. NLRB v. Milco, Inc., 388 F.2d 133 (2 Cir. 1968).

It is perfectly clear that the picketing activities of the Union from December 12 to 19, 1966 were in violation of the Act. The wording of the signs, the solicitation of authorization cards, the threats of boycott and the general application of economic pressure are substantial evidence of the recognitional nature of the picketing.

The Union on and after December 27th ostensibly sought to put on the trappings of informational picketing and declared that its sole purpose at that time was to publicize the Company's employment conditions. This avowed obective was announced in the Union's letter of December 20th to the Board, and new wording was placed on the picket signs to conform to it. It is settled, however, that the Board is not

bound to accept such signs and statements at face value, but is entitled to consider the totality of the Union's conduct. NLRB v. Local 182, supra, 314 F.2d at 58.

 Although this is not a case under § 8(b) (7) (C) of the Act where the Board must determine the effect of the picketing, NLRB v. Local 182, supra, that effect is one of the circumstances which may be considered in determining what the real purpose is insofar as the actual effect achieved is the natural and logical consequence of what the picketers are saying and doing. NLRB v. Local 3, International Brotherhood of Electrical Workers, 317 F.2d 193, 199 (2 Cir. 1963). Since it is undisputed that deliveries were stopped and customers were put under pressure to withdraw their business from the Company, the failure of the Union to advise union employees of other concerns that it was not seeking to stop deliveries, and its failure to release Bobbie Brooks and Russ Toggs from their boycott of the Company, supports the inference that the Union intended something more than permissible informational picketing.

Also, the Union cannot disassociate itself from the activities of its picket, Laviano, who, while he was picketing after December 27, 1966, urged Company employees to join the Union. Laviano witnessed earlier Union attempts to solicit members from among the Company's employees and was therefore familiar with the earlier goals of the Union. Furthermore, his ardent loyalty to the Union and his general loquaciousness should have alerted the Union to his probable conduct. Although we do not decide that a Union is always responsible for the conduct of its pickets, there is enough to support the Board's finding in this case.

Finally, we should note that we are not bound by the ruling in Kaynard v. Knitgoods Workers' Union, Local 155 (No. 67–C–129, E.D.N.Y. March 2, 1967) denying an earlier application for a temporary injunction in this case. Although the district judge did not find

the proscribed purpose, he recognized that the question was one of fact about which reasonable men may differ. The Board did just that, and we are bound, as the district court was not, by the substantial evidence rule.

Enforcement granted.