Edward A. GRUPP, Acting Regional Director for Region Six of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, and its Local Union No. 10, AFL–CIO, Respondents.

Civ. A. No. 70–1136.

United States District Court,
W. D. Pennsylvania.

Oct. 16, 1970.

486

Michael A. Taylor, N. L. R. B., Pittsburgh, Pa., for petitioner.

Melvin Schwartz, Cooper, Goodman & Schwartz, Pittsburgh, Pa., for respondents.

## OPINION

GOURLEY, District Judge:

Petitioner, on behalf of the National Labor Relations Board, has instituted this action against respondents pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, 61 Stat. 149, 73 Stat. 544, 29 U.S.C. § 160(*l*), alleging there is reasonable cause to believe that respondents have engaged in an unfair labor practice in violation of Section 8(b) (4) (i, ii), subparagraph (B), of the Act, 29 U.S.C. § 158(b) (4) (i, ii) (B). A temporary injunction is sought pending a final determination by the Board of charges filed by the Associated Trades & Crafts International Construction Union and NTC Construction Company (hereinafter called NTC) against respondents.

An extensive evidentiary hearing has been conducted. The Court has reviewed the pleadings, the evidence elicited at the hearing and the applicable law and is of the opinion that a temporary injunction should issue.

The controversy arises out of the construction of a townhouse apartment building in Butler, Pennsylvania (hereinafter called the Project). NTC, a Pennsylvania corporation, is the general contractor for the Project. Dick Miller Electric Company (hereinafter called Miller), also a Pennsylvania corporation, is an electrical contractor to which NTC has subcontracted performance of the electrical work. The subcontract is valued in excess of $66,000.

During the past twelve months, Miller has purchased goods and materials valued in excess of $50,000 directly and/or indirectly from outside the Commonwealth of Pennsylvania for use at its Pennsylvania construction sites, and it is engaged in interstate commerce within the meaning of the Act.

Miller's employees are represented not by respondents but rather by the Associated Trades & Crafts International Construction Union (hereinafter called Associated Trades). Miller is a member of a multi-employer bargaining group, the United Contractors Association, which entered into a collective bargaining agreement with Associated Trades effective January 1, 1970 and terminating on December 31, 1971.

NTC commenced construction at the Project on July 14, 1970. On August 6, 1970, a conference was attended by Carl White, Assistant Manager of NTC, George Kusevich, Project Manager of NTC, Clyde Yohe, President of the Butler County Building Trades Council, William Bogan, Business Manager of Bricklayers Local 62, Sonny Kaiser, representing the Plumbers, and Carl Staley, Business Manager of respondent Local 10. At whose instance the meeting was called has not been indicated. At the meeting, the representatives of NTC were asked by Staley to sign an agreement binding NTC to use only AFL-CIO employees. Staley observed that Miller's employees were not represented by an AFL-CIO affiliated Union. If Miller were used by NTC as a sub-

contractor, Staley indicated respondent Local 10 would picket the site. In response to Staley's statement, Kaiser said that he would honor the picket lines. The other Unions' representatives nodded in agreement. A possible solution, Staley suggested to the representatives of NTC, would be to induce Miller to agree to use only men who were members of an AFL-CIO affiliate. Apparently, NTC neither signed the agreement requested by Staley nor followed his suggested alternative solution to the problem.

On August 10, 1970, Staley met with White, Assistant Manager of NTC, and advised that respondent Local would engage in "informational picketing" at the Project. On August 12, 1970, Staley wrote White a letter confirming that respondent was going to place an informational picket at the Project gate. Staley also advised that respondent-Local's dispute was only with Miller. He further stated, "We want you to know that we are in no way suggesting or requesting that you cease doing business with this firm."

Also on August 12, 1970, Staley wrote Miller and Yohe, President of the Butler County Building Trades Council. Staley advised Miller that respondent Local 10 "intends to picket you on all projects that you may be working on now, or anytime in the future, in our jurisdiction." Staley counseled Yohe "that we do not request any help from you or any of your affiliates" but "suggest you tell your affiliates that we are not asking anybody to cross or not to cross our picket line."

Miller commenced work at the Project on September 10, 1970 with employees who were members of Associated, which is not affiliated with the AFL-CIO. On September 11, 1970, Carl Staley and two other members of respondent Local 10 appeared at the Project site and began picketing with signs stating "Dick Miller Elect. Co. and their employees are in no way affiliated or in signed agreement with the International Brotherhood of Electrical Workers AFL-CIO." The

picketing was conducted on a sidewalk adjacent to where the Miller truck was parked. On this first day of the picketing, the masons and plumbers stopped work.

Miller worked at the Project site through the fifteenth or sixteenth of September, completing about five per cent of the contemplated electrical work. Miller then was required to perform on another job and its return is not expected until November. Respondent Local 10 continued its picketing during Miller's presence at the site through the fifteenth or sixteenth and has continued almost every working day thereafter until the present, although the Miller truck has been absent from the Project site. Each day, respondent has utilized two pickets, each carrying signs, and a third person present to relieve one of the two pickets.

On September 18, 1970, White asked one of the men picketing how long they intended to continue. He answered that they would leave when Miller left. Staley, who was present at the time, affirmed the response.

At some time subsequent to the commencement of the picketing, members of the Operating Engineers, who are responsible for running heavy equipment, honored the picket line and refused to work. By virtue of their absence, work upon the Project has totally ceased. Within the recent past, a portion of the excavation at the Project has collapsed jeopardizing adjacent structures, but NTC has been unable to secure the labor of the Operating Engineers to rectify the situation.

In this proceeding pursuant to Section 10(*l*) of the Act, the court must find that the National Labor Relations Board had reasonable cause to believe that the charge of unfair labor practices by respondents was true, so as to authorize a preliminary injunction against such practices. The Court is not called upon to determine whether, in fact, a violation of the Act has been committed. Penello v. United Hatters, Cap and Mil-

linery Workers Union, AFL-CIO, 174 F. Supp. 887, 889–890 (D.Md.1959). It is sufficient for the Board to establish a prima facie case or probability of a violation. Brown v. National Union of Marine Cooks and Stewards, 104 F. Supp. 685, 688 (D.Cal.1952).

■ Involved here is the conduct of respondents at a common jobsite in the construction industry. In determining whether respondents' conduct violated the secondary boycott provisions of Section 8(b) (4) (i, ii) (B) of the Act, the ultimate question to be resolved is whether the respondents' objective was to limit its dispute to the primary employer, Miller, or rather was to embroil neutral employers and/or their employees. International Brotherhood of Electrical Workers, Local Union No. 11, AFL-CIO, et al., 1965 CCH NLRB Para. 9654. If one of respondents' objectives was to apply secondary pressures, it is no defense to a violation of the Act that other objectives sought to be attained by respondents' activities were lawful. N.L.R.B. v. Denver Building & Construction Trades Council et al., 341 U.S. 675, 689, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

In the case of Moore Dry Dock Company, 92 N.L.R.B. 547 (1950), the National Labor Relations Board prescribed certain criteria for determining the lawfulness of common-situs picketing, stating at 549:

"* * * we believe that picketing of the premises of a secondary employer is primary if it meets the following conditions: (a) the picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs; (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer."

The Board has subsequently indicated that the standards established in *Moore*

*Dry Dock Co., supra,* are "to be regarded merely as aids in determining the underlying question of statutory violation." Plauche Electric Inc., 135 N.L.R.B. 250. Courts have treated the standards enunciated as "evidentiary tests" to aid in determining whether a violation has occurred. N.L.R.B. v. General Drivers, Warehousemen and Helpers Local 968, etc., 225 F.2d 205, 209 (5th Cir. 1955); Retail Fruit & Vegetable Clerks Union Local 1017, Retail Clerks Intern. Ass'n, AFL-CIO v. N.L.R.B., 249 F.2d 591, 595 (9th Cir. 1957).

■ Applying the aforementioned principles to the instant case, the Court concludes there is reasonable cause to believe that respondent Local 10 has violated Section 8(b) (4) (i, ii) (B) of the Act. First, there is ample evidence to indicate that said respondent has failed to limit its picketing at the Project to times when the primary employer, Miller, has been present, as prescribed in the *Moore Dry Dock* case, *supra*. Miller was present at the Project only for five or six days in September yet respondent Local 10 has continued to picket at the Project long thereafter. The Court rejects respondents' contention that it could not be determined whether or not Miller's men were present on a given day. When Miller was present, its truck was parked at the Project. When absent, the truck was not there. Respondent Local 10 should have known when Miller was or was not working at the Project.

The Court is aware of conflicting judicial decisions as to whether common-situs picketing otherwise in conformity with the *Moore Dry Dock* standards is violative of the Act merely where the picketing is conducted in the absence of the primary employer. It is unnecessary to determine whether this factor alone would be sufficient to establish reasonable cause to believe the Act has been violated, for there is an additional factor in the instant case which requires a finding in favor of plaintiff.

The conduct of respondent Local 10 involved more than merely picketing. The

picketing cannot be isolated from the statements of Staley to the Assistant Manager and Project Manager of NTC. Miller, the subcontractor, was not present at the conference held on August 6, 1970. Staley's comments at that meeting were directed solely to NTC, the general contractor. He sought from NTC an agreement that all men working on the job would be members of AFL-CIO affiliates. NTC could only comply with the request by replacing Miller with another contractor or by inducing Miller to use AFL-CIO affiliated employees. If NTC did not comply, Staley threatened NTC with picketing which representatives of the bricklayers, plumbers and other secondary employees acknowledged they would honor. Staley's statements on August 6, 1970 provide an ample basis for the Board's finding of reasonable cause to believe that respondent Local 10 had an objective of inducing the general contractor, NTC, to cease doing business with a subcontractor, Miller, in violation of Section 8(b) (i, ii) (B) of the Act. See International Brotherhood of Electrical Workers, Local Union No. 11, AFL-CIO et al., *supra*.

Respondents have strenuously argued that the picketing has been solely informational and, thus, within the protection of Section 8(c) of the Act, 29 U.S.C. § 158(c), and the First Amendment to the Constitution. Were the sole objective of the picketing to advertise to the public that Miller's employees were not members of a union affiliated with the AFL-CIO, such a conclusion might be warranted.

After the August 6, 1970 meeting, Staley sought by his letters and the language of the picket signs to disclaim any unlawful objectives and to characterize the picketing as informational. These letters and the language of the signs, however, need not be accepted at face value and without due regard to the totality of the conduct of respondent Local 10. N.L.R.B. v. Knitgoods Workers Union Local 155, I.L.G.W., 403 F.2d 388, 390–391 (2d Cir. 1968). In my judgment, these later disclaimers were insufficient to override Staley's earlier statements as to the objectives of the picketing. Picketing, although peaceful, which has as its objective the inducement or encouragement of secondary pressure, is protected by neither Section 8(c) of the Act nor the First Amendment to the Constitution. International Brotherhood of Electrical Workers Local 501 et al. v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951).

While finding reasonable cause to believe that respondent Local 10 is engaging in an unfair labor practice, the Court finds no evidence that respondent International has encouraged or acquiesced in the conduct of respondent Local 10. Accordingly, relief against respondent International will be denied.

The Court finds that Complainant NTC would suffer irreparable harm if a temporary injunction were not granted. Complainant's work at the Project has come to a complete standstill by virtue of the refusal of essential secondary employees to cross respondent Local's picket line. The work is seasonal and the inclement seasons are rapidly approaching. Even more compelling is the fact that NTC cannot repair a collapsed portion of an excavation at the Project without said employees. This presents an ever increasing threat to surrounding structures as inclement weather approaches. Accordingly, a temporary injunction shall issue in accordance with this Opinion against respondent Local 10.

This Opinion shall constitute the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.