John A. PENELLO, Regional Director, National Labor Relations Board, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 26, et al., Defendants.

Civ. A. No. 2450–63.

United States District Court District of Columbia.

Oct. 28, 1963.

Benjamin K. Blackburn, Baltimore, Md., for plaintiff.

Ronald Rosenberg, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This is an application by the National Labor Relations Board for a temporary or interlocutory injunction to restrain a labor union from certain specified activities during the pendency of a proceeding before the Board. The application is presented under the provisions of Section 10(1) of the National Labor Relations Act, found in 29 U.S.C. § 160(1). This statute in effect provides that whenever it is charged that any person has engaged in any one of certain specified unfair labor practices and if, after making a preliminary investigation, the Regional Director or Regional Attorney of the National Labor Relations Board has reasonable cause to believe such charge is true and that a complaint should issue, he shall on behalf of the Board petition for

appropriate injunctive relief pending the final adjudication of the Board with respect to such matter.

When this proceeding was instituted there were two charges of unfair labor practices presented. One was a threat on the part of the respondent union to force or require an employer to assign particular work to employees of the respondent union. This unfair labor practice is defined in 29 U.S.C. § 158(b) (4) (ii) (D). There was also another charge, namely, a threat to carry out or institute what is generally known as a secondary boycott. The second charge is not being pressed and the Court therefore will direct its attention only to the first charge. It might be said that perhaps the reason why the second charge is not being pressed is that the affidavits submitted on this motion do not establish the existence of the alleged offense contained in the second charge.

This case involves a jurisdictional dispute between two unions. It relates to the construction of the second New House Office Building now in process of erection in this City. The prime contractor for the construction of the building is McCloskey & Company. One of the subcontractors is a joint venture known as Foley-Ernst, which has a contract for some of the electrical work and some of the work of constructing ceilings in the building. One of the functions of the sub-contractor was to hang or construct so-called egg crate ceilings. It is understood from the oral argument that an egg crate ceiling is a ceiling which, among other things, has apertures through which electrical fixtures are hung. Originally the employees engaged in doing this work for the sub-contractor were electricians who were members of the Electrical Workers Local 26 of the International Brotherhood of Electrical Workers. Sheet metal workers, however, represented by Sheet Metal Workers Local 102 of the Sheet Metal Workers International Association claimed that the work should properly be assigned to them. Some time ago there was established by the American Federation of Labor-Congress of Industrial Organizations, a National Joint Board for settlement of jurisdictional disputes in the building and construction industry. This Board was created by joint action of the labor unions and some of the builders engaged in that industry. This Board held hearings in order to determine the controversy between Local 26, representing the electricians, and Local 102, representing the sheet metal workers. The Board awarded the work to the sheet metal workers. It appears, however, that the electricians were not willing to acquiesce in this decision and neither was Foley-Ernst because Foley-Ernst preferred to continue to have the work done by electricians for some reason best known to itself.

McCloskey, the prime contractor, thereupon filed two charges with the National Labor Relations Board, one being a threat of a secondary boycott, which has been abandoned, and the other being that Local 26 refused to abide by the award and threatened McCloskey and Foley-Ernst with work stoppages and strikes if sheet metal workers were hired to do the job as required by the award of the National Joint Board. In the meantime the work on the ceilings has stopped and nothing has been done on them, according to the papers and statements of counsel, since September 9th. While the work on the building is continuing, it is stated that the suspension of the work on the ceilings may result in a delay of completion of the entire structure.

The Board has issued or filed a complaint. The Regional Director thereupon filed a petition for a preliminary or temporary injunction to continue until the disposition of the complaint by the Board. The Regional Director alleges that he has reason to believe the charges to be true.

At the outset it is necessary to bear in mind the function of the Court in passing upon an application for an injunction authorized by the statutory provision, to which reference has been made, as well as the limitations on the powers and authority of the Court in that connection. The Court does not determine

whether the charges have in fact been sustained and whether the respondent union, in this case Local 26, is actually guilty of an unfair labor practice. If there is a conflict in the evidence, the Court does not resolve the conflict. All these matters are for the determination of the Board and the Court would be going beyond the function reposed in it by statute if it attempted to make findings of fact or conclusions of law that would definitively determine either questions of fact or questions of law. The only function of the Court is to decide whether there is probable cause to believe the charge or the charges to be true. The Court must stop at that point. For the Court to ascertain the facts would be going beyond its function and attempting to do what the law leaves to the National Labor Relations Board. If the Court attempted to make such findings, they would have no legal or binding effect. Actually, they might hamper or embarrass the Board in performing its functions.

These propositions of law are well established by the authorities. Thus, in Douds v. Milk Drivers and Dairy Employees Union, Local 584, 2 Cir., 248 F. 2d 534, 537, the Court of Appeals for the Second Circuit stated:

"The District Court was not required to make final or even preliminary findings as to the truth or falsity of the facts alleged in the petition of the Director. By the terms of § 10(1) the Court's function is limited to ascertaining whether the Director could have 'reasonable cause to believe' that the charges filed were true and to granting such equitable relief 'as it deems just and proper.'"

In McLeod for and on Behalf of N. L. R. B. v. Compressed Air Foundation Etc., Local 147, 194 F.Supp. 479, 481, affirmed by the Court of Appeals for the Second Circuit in 292 F.2d 358, the Court stated:

"On an application of this nature the Court may not determine whether or not the Act has been violated as charged since any determination on the merits must be made by the Board. The sole duty of the Court is to ascertain whether the Regional Director had a reasonable cause to believe that the Act has been violated."

Numerous other cases held to the same effect. Graham for and on Behalf of N. L. R. B. v. Retail Clerks International Association, Local No. 57, D.C., 188 F. Supp. 847, 852; Penello for and on Behalf of N. L. R. B. v. Local Union No. 59, Sheet Metal Workers International Association, D.C., 195 F.Supp. 458, 471; Kennedy for and on Behalf of N. L. R. B. v. Construction, Production and Maintenance Laborers' Union, Local 383, D.C., 199 F.Supp. 775, 777.

The basic facts out of which this case arises, as they have been summarized, are not in dispute. What is in dispute is the vital charge that a strike of electricians has been threatened by the respondent union, Local 26, against the prime contractor. The prime contractor alleges that it has been, while the respondent denies the making of the threat. Both sides have submitted detailed affidavits in support of their factual contentions.

While the charge advanced by the Board is that such a threat has been made by the respondent both against McCloskey, the prime contractor, and Foley-Ernst, the sub-contractor, there is not sufficient proof of any threat directed against the sub-contractor. Both the representative of the union and the sub-contractor expressly deny any such threat. None appears to have been necessary because Foley-Ernst, the sub-contractor, has indicated not only a desire but an intention to disregard the decision of the National Joint Board and to continue employing electricians for this particular task.

It is otherwise, however, as to the threat to call an electricians' strike charged to have been directed to McCloskey, the prime contractor. Affidavits submitted in behalf of the Board indicate that a conference took place between representatives of the two unions, a representative of the prime contractor

and a representative of the sub-contractor. It further appears that during this meeting a telephone conversation took place with J. C. McCloskey at his office in Philadelphia. He was a Vice-President of McCloskey & Company. Affidavits submitted in behalf of the Board indicate that at that conference Mr. McAlwee, the representative of Local 26, stated that if the work assignment was changed from the electricians to the sheet metal workers there would be no electricians on the job.

In a sense this statement is ambiguous. It might be just a prophesy. On the other hand, the persons participating in the conference were realists and they construed this statement as an intimation that a jurisdictional strike would be called if the work assignment was changed from the electricians to the sheet metal workers. An affidavit was submitted by Mr. McAlwee denying that he ever made any threat and likewise a representative of the sub-contractor denied that any threat was made.

What constitutes a threat, of course, is often a matter of inference or interpretation. At best, there is a conflict. The fact of the conversation is not denied by McAlwee. He merely denies that he ever made a threat. As indicated before, it is not for the Court to resolve the conflict.

■ The Court finds that the Regional Director had reasonable ground to believe that the charge just referred to was true.

■ Counsel for the respondent union also raises a question of law as to whether a proceeding such as has been instituted by the Board may be properly maintained or whether the proper course for the Board to pursue is to conduct a so-called 10(k) proceeding, that is, a proceeding under 29 U.S.C. § 160(k), which relates to the resolution of jurisdictional disputes. This doubtful question of law likewise must be determined, in the first instance, by the Board. Whether there is an eventual judicial review of any determination that the Board might make is something that should not be decided at this juncture.

■ Consequently, the Court concludes as a matter of law that the injunction prayed for should be issued.

■ There are a couple of other matters to which the Court desires to advert at this point. At one time in the course of the argument the respondents' counsel asked leave to supplement his affidavits by oral testimony, which the Court deemed unnecessary. Rule 43(e) of the Federal Rules of Civil Procedure provides that:

> "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

In other words, the more usual practice is to hear motions on affidavits, although the Court in its discretion may take oral testimony. Ordinarily in this Court the practice is to hear motions on affidavits and it is the exception to take oral testimony. It would be very burdensome indeed if oral testimony was heard on a great many motions because this Court is so busy that it frequently has to hear and determine 10 to 15 motions a day.

If it was the function of the Court, however, to resolve the questions of fact and to determine a question of veracity, the Court would have been inclined to hear oral testimony, even of its own motion, because matters of credibility and veracity cannot be easily determined on affidavits. All that the Court must do here, however, and all that it is restricted to doing is to decide whether reasonable cause has been established, that is, reasonable and probable cause, and that can readily be done on the basis of affidavits. It is true that the statute under which this proceeding is brought authorizes parties to present any relevant testimony. Relevant testimony, however, may be presented by affidavit, by deposition, or by witnesses testifying orally. The

statute does not profess to limit the discretion of the Court in that respect.

In determining whether to grant the injunction the Court must be guided by general equitable principles. The balance of convenience clearly predominates in favor of the petitioner. If as it is claimed there has been no threat and there is no intention to engage in a jurisdictional strike, the respondent would not be unduly burdened by the injunction. On the other hand, to deny the injunction, if it should turn out that a threat actually was made and there is an intention to put it into effect, the result might be adverse to the best interests of the public as well as the contractor and the employees themselves.

This dispute is in an incipient stage because the Court is informed that no one has lost his job as yet since there is other sheet metal work and electrical work that is being pursued on this building. The dispute should be checked and resolved while it is still in an embryonic state. It is a well known fact that jurisdictional disputes among labor unions have sometimes expanded to a point at which they have become the bane of trade unionism and on occasion have worked havoc. They may lead to futility and frustration. A jurisdictional strike sometimes creates a situation where there is work to be done by one of two groups of laboring men and yet both are out of work and the families of all of them suffer financially. Unemployment insurance funds may be unfairly depleted and in extreme instances public relief rolls may become improperly burdened. The employer often, in the case of a jurisdictional strike, stands helpless and must cease business until the dispute is resolved. The public is always adversely affected, and in this instance where the project is the construction of a large and important Government building, the Government would be seriously prejudiced. I might say that when these jurisdictional strikes continue and become publicized, labor unions sustain a loss of public esteem, for the public is likely to become disgusted and look with disdain upon such proceedings.

A far reaching step has been taken by far-sighted labor leaders in establishing, with the cooperation of some of the employers, a National Joint Board to resolve jurisdictional disputes in the building industry, but unless the unions are willing to cooperate and abide by decisions of the Board the creation of such a Board will not effectuate its objective. Here we have a union that is recalcitrant and rebels against the decision of the Board and declines to abide by it. Such situations might well lead to an approach to anarchy and chaos in the labor field.

The Court of course assumes in granting a temporary injunction that the Board will expeditiously dispose of the proceeding before it. If it fails to proceed with reasonable dispatch the Court will entertain a motion to dissolve the injunction.

A transcript of this oral decision will constitute the findings of fact and conclusions of law. Counsel will submit an appropriate order in accordance with this ruling.