**CENTRALIA BUILDING AND CONSTRUCTION TRADES COUNCIL, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 19807.**

United States Court of Appeals District of Columbia Circuit.

Argued June 7, 1966.

Decided June 30, 1966.

---

Mr. Thomas X. Dunn, Washington, D. C., with whom Messrs. Louis Sherman, Washington, D. C., and Hugh Hafer, Seattle, Wash., were on the brief, for petitioner.

Mr. Malcolm D. Schultz, Attorney, National Labor Relations Board, of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, and Gary Green, Attorney, National Labor Relations Board, were on the brief, for respondent.

Before DANAHER, WRIGHT and TAMM, Circuit Judges.

DANAHER, Circuit Judge:

The petitioner has asked this court to set aside the Board's decision and order [1] which had adopted the trial examiner's findings, conclusions and recommendations. Concededly, there is no dispute as to the facts, and our only question is whether or not the Board erred as a matter of law in concluding that petitioner had engaged in unfair labor practices in violation of section 8(b) (7) (C) of the Act.[2]

On January 12, 1965, Pacific Sign & Steel Building Co. (herein, Pacific), was engaged in construction work at Chehalis, Washington, when the petitioner began picketing the site while employees of Pacific were on the job. Petitioner picketed Pacific for more than 30 days without filing a petition under section 9(c) of the Act. Petitioner was not then and is not now the certified representative of Pacific's employees. Work stoppages occurred. Petitioner contended that an object of its picketing was to require Pacific to execute an instrument entitled "Settlement Agreement," which would have required Pacific to pay to its building and construction employees wages and fringe benefits equal to such allowances then being received by comparable employees working under the Union Agreement. If petitioner's industry agreements were so negotiated as to provide increases or decreases, Pacific's total "economic package" was to be increased or decreased by an equivalent amount. Petitioner in its proposed agreement would have caused Pacific to

1. 155 NLRB No. 80 (1965).

2. National Labor Relations Act as amended, 73 STAT. 519, 544.

permit the petitioner or its accountants to make monthly inspection of Pacific's records of the economic benefits then being accorded to Pacific's employees. Petitioner further offered to agree that its picketing of Pacific would cease and not be resumed during the period of the agreement which was subject to termination by either party upon ten days' notice.

The proposed settlement agreement was served upon Pacific with a covering letter in which the petitioner pointed out that unless Pacific was willing to meet union standards, petitioner would have "no choice but to publish the fact that [Pacific's] employees are working for wages which are less than, and under conditions which are inferior to union wages and conditions."

Petitioner's letter, it was stated, was "not to be construed as a request for recognition." Pacific rejected the proposed agreement, and when picketing continued, Pacific filed unfair labor practice charges.

 We regard it as settled that a union legitimately may be concerned that some employer is undermining area standards of employment by maintaining lower standards.[3] The Board itself has recognized[4] that no unfair labor practice occurs when a union engages in picketing which has for its sole object truthfully advising the public that some employer is operating under substandard working conditions.

Here, however, the Board, taking account of all circumstances, adopted its trial examiner's findings that an object of the union's picketing of Pacific was recognitional. The petitioner had commenced picketing of Pacific without making prior effort to determine what Pacific's labor standards were. It was uncontradicted that no representative of the petitioner had ever inquired about what wages or benefits were being paid to Pacific's employees.

The proposed contract would have bound Pacific to raise or lower its payments in wages and benefits whenever wage rates were to be raised or lowered under union agreements. Pacific would have been required to throw open its records as to such payments that monthly inspection might be made by petitioner's accountants.

The trial examiner and the Board concluded that the net effect of Pacific's entering upon the proposed agreement would have been to establish the petitioner as the negotiator of wage rates and benefits paid to Pacific's employees. The trial examiner and the Board thus determined that an object of the picketing was to force or require Pacific to recognize the petitioner as the representative of Pacific's employees.[5]

"With such an agreement in effect, very little would be left in the field of collective bargaining to a representative chosen by Pacific's employees, and therefore the will and choice of employees when and if exerted with respect to a bargaining agent would be thwarted and nullified. I think [said the trial examiner] the freedom of employees to make their own choice in such matters cannot lawfully be foreclosed in this manner. Nor can the disclaimers in the letter accompanying the proposed agreement prevail against the intent and effect of the agreement itself."

 We are persuaded that it was open to the Board in its expertise to make a judgment in light of the conceded facts and the circumstances shown on this record. It is not for us to reject the conclusion that an object of the picketing was to achieve recognition of the petitioner.

---

3. See Meat and Highway Drivers, Dockmen, etc. v. N.L.R.B., 118 U.S.App.D.C. 287, 293, 335 F.2d 709, 715 (1964); Truck Drivers Union Local No. 413, etc. v. N.L.R.B., 118 U.S.App.D.C. 149, 158, 334 F.2d 539, 548 (1964).

4. Houston Building and Construction Trades Council, 136 NLRB 321, 322, 323 (1962).

5. § 8(b) (7), 73 Stat. 544.

We read the Board's order as not precluding picketing for the purpose of truthfully advising the public that Pacific does not employ members of or have a contract with the petitioner. Rather, the order would restrain picketing only where an object of such picketing is proscribed by section 8(b) (7),[6] viewed in its entirety.

The order of the Board will be Enforced.

6. Cf. Dayton Typographical Union No. 57 v. N.L.R.B., 117 U.S.App.D.C. 91, 95, 96, 326 F.2d 634, 638, 639 (1963).