**David C. SACHS et al., Petitioner,**

v.

**PLUMBERS LOCAL UNION NO. 5 et al.,
Respondent.**

**Civ. A. No. 2770–69.**

United States District Court
District of Columbia.

Dec. 11, 1969.

Walter H. Maloney, Jr., Baltimore, Md., for petitioner.

Martin F. O'Donoghue, Jr., Washington, D. C., for respondent.

## MEMORANDUM

SIRICA, District Judge,

The Acting Regional Director of the Fifth Region of the National Labor Relations Board has brought this action for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act.[1] The petitioner seeks to enjoin the respondent, Plumbers Local Union No. 5 (hereinafter referred to as the union), from picketing at jobsites of the A. S. Johnson Company (hereinafter referred to as Johnson), until the disposition by the Board of a complaint charging the union with violations of Section 8(b) (7) (C) of the Act. This section prohibits so-called recognitional or organizational picketing by an uncertified union for a period in excess of thirty days without filing a petition for a representation election.

The facts giving rise to this action are not in dispute. Johnson, a Delaware corporation, maintains its principal place of business in the District of Columbia, and is engaged in the building and construction industry in the metropolitan Washington area as a mechanical contractor. The respondent union is affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO. It represents union plumbers in Washington and neighboring Maryland and Virginia. The plumbers employed by Johnson are not represented by any union.

During the period involved here seven construction projects on which Johnson was a subcontractor were picketed by

---

1. 49 Stat. 449 (1935) and 61 Stat. 136 (1947), as amended, 29 U.S.C. §§ 151–168 (1964) (hereinafter referred to as the Act).

the union.[2] The pickets carried signs which stated:

Plumbers on Strike
against A. S. *Johnson* and *Jayco Inc.*
Substandard employment
conditions on this job

*The union does not intend by this picket to induce or encourage the employees of any other employer to engage in a strike or concerted refusal to work.*

Other signs read:

A. S. Johnson Co., Inc.
Unfair to
Plumbers Local 5

*The latter sign also included the substandard language as stated above. This picketing had continued for more than thirty days at the time the NLRB complaint was filed. The picketing resulted in work stoppages and refusals to make deliveries at the jobsites involved.*

On September 3, 1969, after picketing had been going on for over a month at several of the jobsites, the union sent Johnson a telegram *suggesting* " * * * a meeting to discuss mutual problems." Johnson replied by certified mail, dated September 5, " * * * you will have to be more explicit as to our mutual problems before we are interested in scheduling a meeting." The union responded by telegram that its request " * * * is and remains solely for the purpose of informing you in person that immediately upon your informing us that you have established for your plumber employees the wages, hours and working conditions now enjoyed by members of Local 5, whom we represent, we will immediately cease all our informational picketing. We firmly disclaim now or at any time any organizational or recognitional purpose."

At a court hearing held on the Regional Director's petition for an injunction, Mr. Samuel Armstrong, the business manager of the respondent union, testified that the union did not have any intent to organize Johnson's employees or to force recognition of it by Johnson as the bargaining agent for its employees. Mr. Armstrong stated that the union and its unionized plumbing contractors were being hurt competitively by the non-union contractors who were paying their plumbers less than the union wage rate. This lower cost factor was enabling the non-union contractors to successfully underbid the union contractors for the majority of the jobs in the area. Therefore, Mr. Armstrong testified, it was the intention of the union in picketing Johnson to require Johnson and all of the contractors in the area to pay the union rate as a protective measure in order to enable the unionized contractors to compete with the non-union contractors. He also stated that the union at no time approached Johnson with the intent of establishing a contractual relationship or even of opening negotiations. Mr. Armstrong testified that the union did not seek to have Johnson adopt the union contract provisions for its plumber employees. He stated that the union merely sought to have Johnson pay its plumbers an amount equal in cost to the wages and fringe benefits paid by union contractors. He denied any attempt to force Johnson to pay the same wages and/or fringes as called for in the union contract. On the question of organizational intent, Mr. Armstrong did state on cross examination that one employee of Johnson had become a member of the union and that seven or eight others had applied for membership. He stated that the union was open for membership and that this was well known by plumbers in the area, and that the union and its sister local of the steamfitters engaged in recruiting efforts throughout the area. Although he was not certain, he could not deny that a steamfitter organizer had been active among the Johnson employees.

2. Of these projects two were in the District of Columbia, four were in Maryland and one was in Virginia.

At the outset the Court would like to emphasize that it is fully aware of its duty in passing on a petition for injunctive relief under Section 10(*l*). The Court is not required to make a determination on the merits of this controversy, that is, as to whether the respondent union violated Section 8(b) (7) (C) of the Act. This is the function of the Board. In a 10(*l*) application the Court must examine the evidence presented to make a determination of whether there was *reasonable cause to believe* that the Act has been violated.[3] However, more than a mere assertion by the Regional Director that there is such reasonable cause is necessary to justify the granting of the injunction. Otherwise there would be no purpose in requiring resort to the court for the injunction. This principle was well stated by the court in Cuneo v. Local 472, International Hod Carriers Building & Common Laborers' Union, 175 F.Supp. 131, 139 (D.N.J.1959):

Granting that petitioner need only demonstrate reasonable grounds to believe his allegations to be true in order to obtain the relief he seeks, *something beyond a bare assertion is required in reaching even this minimal standard.* (emphasis supplied).

The alleged violation in this case is of Section 8(b) (7) (C) of the Act.[4] The question before the Court at this time is whether there was reasonable cause to believe that the picketing by the respondent union had as a purpose the organization of Johnson employees or the gaining of recognition by Johnson as the bargaining agent for the employees. The Act does not require that recognition or organization be the sole purpose of the picketing in order for it to be illegal. It must merely be shown to be one of the objects of the picketing.

3. See Douds v. Milk Drivers & Dairy Employees Union Local 584, 248 F.2d 534, 537 (2d Cir. 1957):

The District Court was not required to make final or even preliminary findings as to the truth or falsity of the facts alleged in the petition of the Director. By the terms of § 10(*l*) the Court's function is limited to ascertaining whether the Director could have 'reasonable cause to believe' that the charges filed were true and to granting such equitable relief 'as it deems just and proper.'

*Accord*, Penello v. International Brotherhood of Electrical Workers, Local 26, 223 F.Supp. 44 (D.D.C.1963); McLeod for and on Behalf of N. L. R. B. v. Compressed Air, Foundation, Tunnel, Caisson, Subway, Cofferdam, Sewer Construction Workers, Local 147, 194 F.Supp. 479 (E.D.N.Y.), aff'd 292 F.2d 358 (2d Cir. 1961).

4. Section 8(b) (7) (C) provides:

It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \*

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer when *an object* thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

\* \* \* \* \*

(C) Where such picketing has been conducted without a petition under section 9(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services. (emphasis supplied).

▮ The union has expressly disclaimed, both in its telegram to Johnson and at the hearing on this petition, any intent to organize Johnson's employees or to gain recognition from Johnson. The business manager of the union testified that the union's purpose was solely to inform the public that Johnson was paying substandard wages and to force Johnson to pay the prevailing union rate in the area. This has not been contradicted on cross examination or by any evidence introduced by the petitioner. While it is true that a formal disclaimer of intent does not prevent the finding of recognitional or organizational intent based on collateral inconsistent conduct, the burden is on the petitioner to establish such inconsistent conduct.

▮ The picketing in the present instance is what is commonly known as "area standards" picketing. The maintenance of the compensation rate in a geographic area is a legitimate focus of union activity. Judge Danaher, speaking for the court in Centralia Building & Construction Trades Council v. NLRB, 124 U.S.App.D.C. 212, 214, 363 F.2d 699, 701 (1966), summarized the law on such picketing:

> We regard it as settled that a union legitimately may be concerned that some employer is undermining area standards of employment by maintaining lower standards. The Board itself has recognized that no unfair labor practice occurs when a union engages in picketing which has for its *sole object* truthfully advising the public that some employer is operating under substandard working conditions. (emphasis supplied) (footnotes omitted).

The crucial question here is whether the Regional Director had reasonable cause to believe that the union did not have as its "sole object" the publication of the fact that Johnson was paying substandard wages. Since the petitioner presented no direct evidence as to the union's intent, his position is that the prohibited intent must be inferred from the act of the picketing itself. The petitioner relies on four cases for its proposition that such an inference should be drawn in this case where the area standard sought to be upheld is the union wage rate. Dallas Building & Construction Trades Council v. NLRB, 130 U.S. App.D.C. 28, 396 F.2d 677 (1968); Centralia Building & Construction Trades Council v. NLRB, 124 U.S.App. D.C. 212, 363 F.2d 699 (1966); Local Joint Executive Board, Hotel & Restaurant Employees (Holiday Inns of America), 169 N.L.R.B. No. 102 (1968); Retail Clerks International Ass'n, Local 899 (State-Mart, Inc.), 166 N.L.R.B. No. 92 (1967). In all of these cases the union claimed that its activity was protected area standards picketing. In each, the Board and/or the Court of Appeals held that a violation of Section 8(b)(7)(C) had occurred upon a finding that the union had a recognitional or organizational purpose.

The respondent union relies on cases establishing the permissibility of area standards picketing where there is no evidence of recognitional or organizational intent.[5] The union claims that no recognitional or organizational purpose has been shown by the petitioner. While the area standard which the union attempted to impose on Johnson was the union negotiated rate, the union argues that this is not evidence of intent to gain recognition in view of Board decisions holding that picketing for the union rate is legitimate,[6] and the fact that the union rate was the standard

5. Houston Building & Construction Trades Council, 136 N.L.R.B. 321 (1962); International Hod Carriers, Building & Common Laborers Union of America, Local 41 (Calumet Contractors Ass'n), 130 N.L.R.B. 78 (1961).

6. *See* Retail Clerks International Ass'n, Local 899 (State-Mart, Inc.), 166 N.L. R.B. No. 92 (1967); Houston Building & Construction Trades Council, 136 N.L. R.B. 321 (1962).

area rate as determined by the Secretary of Labor.[7]

■ It is the opinion of the Court that the petitioner has made an insufficient showing of reasonable cause to believe that a violation of the Act has occurred. No evidence other than the picketing itself, the exchange of correspondence between the union and Johnson, and the casual atempt to enlist Johnson employees in the union,[8] has been introduced to support the allegation of recognitional or organizational purpose. This is not sufficient to justify the granting of an injunction against the union's activity. There is no question that area standards picketing directed against non-union employers is a legitimate union activity. Centralia Building & Construction Trades Council v. NLRB, *supra*. There has been no proof that the union's sole purpose in the picketing was not the legitimate one of informing the public that Johnson was paying substandard wages in the hope of forcing Johnson to pay its plumber employees compensation equal in cost to the union rate. This last point is crucial and distinguishes the union's conduct in this case from the proscribed conduct in two of the cases relied on by the petitioner. In both the State-Mart, Inc. and the Holiday Inns of America cases, *supra*, the union had insisted on the employer's adoption of the exact terms of the union contract in the area as the condition for the cessation of the picketing. In State-Mart, Inc., the Trial Examiner's decision, which was adopted without modification by the Board, emphasizes the fact that the demand for exact compliance with all of the terms of the union contract, including the pension and health and welfare plans, was inconsistent with the policy basis for allowing area standards picketing, in that it was a virtual economic impossibility for the employer.[9] The decision there recognizes that the insistence on the payment of equivalent costs would present an entirely different, and by implication proper, situation.[10] In the instant case the union emphasized repeatedly that it was seeking the payment by Johnson of compensation costs equivalent to those of the union contractors so as to remedy the competitive imbalance, and not the adoption by Johnson of the exact provisions of the union contract. In the Holiday Inns of America case, *supra*, not only was there a demand that the employer adopt the provisions of the union contract, but the picketing began after the union had made a demand for recognition on the employer and had lost a representation election.

The other cases relied upon by the petitioner are similarly distinguishable from the instant situation. Although they arose in differing factual contexts, both the Dallas Building & Construction Trades Council and the Centralia Build-

---

7. Under the Davis-Bacon Act, 40 U.S.C. § 276a et seq. (1964), the Secretary of Labor is required to determine the prevailing wage rate for each craft in each locality in which the government is carrying on construction work. This is then the rate which must be paid on the government projects. In the Washington area the Davis-Bacon rate for plumbers is the same as the union rate.

8. The fact of some organizational activity is negated by the testimony of the union business agent that while applications were accepted from several Johnson employees, they would not be admitted to membership until they could be placed with a union contractor. In addition there has been no showing of anything approaching an organizational campaign among Johnson employees.

9. Retail Clerks International Ass'n, Local No. 899 (State-Mart, Inc.), 166 N.L.R.B. No. 92 (1967), TXD at p. 13.

10. In discussing the policy behind the allowance of area standards picketing, i. e., the protection of the union and union contractors from unfair competition based on lower than standard labor costs, the Trial Examiner stated:

The protection to which a union is entitled can readily be achieved by insisting upon equivalent costs for the competing employer.

*Id.*

*ing & Construction Trades Council* cases, *supra*, stand for the proposition that area standards picketing violates Section 8(b) (7) (C) where the union seeks to establish a continuing contractual relationship with the employer. The contractual relationship need not be one of recognizing the union as a bargaining agent, however. In the present case, the union seeks only a cost equivalency payment by Johnson, and there is no evidence that it has ever made a demand that Johnson enter into any sort of continuing contractual arrangement. The union asserts that Johnson could have complied with its condition for terminating the picketing without ever having met with a representative of the union. Therefore, these cases do not support petitioner's claim that the union had a recognitional or organizational purpose. The fact, testified to by Mr. Armstrong on cross examination, that the union contract called for periodic increases in compensation, which the union hoped that Johnson would meet does not establish the type of continuing contractual relationship present in *Centralia*. The picketing here had as its object forcing Johnson to pay the cost equivalent of the present union rate. No agreement was sought as to the future increases. In fact no agreement of any sort was requested. The fact that the union might picket again if the increase in the area standard was not met by Johnson does not invalidate the area standards picketing here. Unlike the *Centralia* case, the union here did investigate the rate being paid by Johnson prior to the commencement of the picketing, and there is no demand for access to the company's books at this time or for the future as was the case in *Centralia*.

It should be noted that we are not concerned here with the informational picketing proviso of Section 8(b) (7) (C). Therefore the fact that the picketing here may have caused work stoppages and prevented deliveries is irrelevant. Prior to applying the informational picketing proviso and the exception to it where there results a disruption of the employer's business, there must first be a finding that Section 8(b) (7) (C) is applicable because of the presence of a recognitional or organizational purpose.[11] In the view the Court takes of this case there has not been a sufficient showing by the petitioner of the presence of a recognitional or organizational purpose to justify the application of Section 8(b) (7) (C).

For the foregoing reasons, the Court is of the opinion that no reasonable cause to believe that a violation of the Act has been shown. The denial of this petition for temporary injunction, however, does not constitute a judicial determination that the respondent did not commit an unfair labor practice as charged. This is a matter for the Board to determine after a full evidentiary hearing.

This opinion constitutes the findings of fact and conclusions of law. Counsel for the respondent will submit an appropriate order.

---

11. Houston Building & Construction Trades Council, 136 N.L.R.B. 321, 323–24 (1962); International Hod Carriers, Building & Common Laborers Union of America, Local 846 (C. A. Blinne Construction Co.), 135 N.L.R.B. 1153 (1962).