**Bernard SAMOFF, Regional Director for the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**LOCAL UNION NO. 492, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Respondent.**

Civ. A. No. 74-284.

United States District Court, E. D. Pennsylvania.

March 1, 1974.

Leonard Leventhal, Regional Atty., Region 4, N.L.R.B., Jeffry C. Falkin, Atty., N.L.R.B., for petitioner.

Leon Ehrlich, Ehrlich & Ehrlich; Reading, Pa., for respondent.

## MEMORANDUM OPINION

FOGEL, District Judge.

This is a petition for a preliminary injunction under § 10(*l*) of the Labor Management Relations Act of 1947, as amended (hereinafter called the Act), 61 Stat. 149, 73 Stat. 544, 29 U.S.C. § 160(*l*), to restrain alleged unfair labor practices pending final adjudication by the National Labor Relations Board (hereinafter called the Board).

On January 23, 1974, a complaint was filed with the Board by Richard H. Lawrence (hereinafter called Lawrence), the general contractor for the construction of a library at the Berks County Campus of Penn State University, charging that Local Union No. 492, United Brotherhood of Carpenters and Joiners of America (hereinafter called the Union), was picketing the construction site in violation of § 8(b)(7)(C) of the Act.

This charge was referred to the Regional Director of the Fourth Region of the Board, who concluded, after a preliminary investigation, that there was reasonable cause to believe the charge of an unfair labor practice. Accordingly, that official filed a petition for injunctive relief with this Court pursuant to § 10(*l*).

A hearing on the petition was held on February 12, 1974, at the conclusion of which the parties were directed to file supplementary memoranda with respect to the factual and legal issues developed during the course of the hearing.

After consideration of the petition, the answer, the memoranda filed in support of and in opposition to the petition, the testimony, exhibits and arguments of counsel at the hearing, we have concluded that petitioner is correct in his assertion that under the guidelines established by judicial decisions interpreting the Act, there is reasonable cause to believe that the respondent Union is committing an unfair labor practice within the meaning of § 8(b)(7)(C).

1. *The standard to be applied by the District Court in § 10(l) proceedings.*

Before reaching the merits of the petition, we will briefly discuss the standards which bind the District Court in determining whether to grant or deny an injunction sought pursuant to the provisions of § 10(*l*) of the Act.

The Court of Appeals for the Third Circuit has held that the District Court has a most limited role in § 10(*l*) cases. In Schauffler v. Local 1291, International Longshoremen's Association, 292 F. 2d 182 (3d Cir. 1961), Judge Biggs stated:

"* * * The Section 10(*l*) procedure reflects the congressional determination that certain unfair labor practices are so disruptive that where there is reasonable cause to believe that they are being engaged in their continuance during the pendency of charges before the Board should not be permitted. * * * The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of ˙an unfair labor practice are present. Nor need the Board conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous. * * *" *Schauffler, supra,* at 187.

The *Schauffler* decision was reaffirmed in the recent case of Samoff v.

Building & Construction Trades Council of Philadelphia & Vicinity, 475 F.2d 203 (3d Cir. 1973), vacated and remanded with directions to dismiss as moot, 414 U.S. 808, 94 S.Ct. 151, 38 L.Ed.2d 44 (1973).

The Court of Appeals in *Building and Construction Trades Council* reversed a decision of the District Court which had denied an injunction under § 10(*l*).

> "The district court noted that *Schauffler* set the applicable standard for determining when a § 10(*l*) injunction should be granted. But it went on to say:
>
>> 'We do not read § 10(*l*), as thus construed, to require a District Court, charged with granting injunctive relief under § 10(*l*) where it is "just and proper", to grant relief based upon legal theories advanced by the Board, which, *while thoughifully presented and not frivolous,* are, in the view of the Court, erroneous.' . (Emphasis added.)
>
> This is a misinterpretation of *Schauffler*. As dictated by that decision, the district courts have a limited role in § 10(*l*) proceedings. *Schauffler* requires only that the Board's theory be substantial and not frivolous; and if it is, it does not matter whether the district court ultimately agrees with it or not. The Board met its burden here for we feel that the district court's statement that the Board's theory was 'thoughtfully presented and not frivolous' can fairly be interpreted to mean that the Board's theory was substantial and not frivolous.

This does not mean that a district court must always grant an injunction even though it disagrees with the Board's legal theory. If the district court can characterize the theory as insubstantial and frivolous, it may refuse the injunction. If the Board's theory cannot be so characterized, however, the district court must grant the injunction since this will best effectuate the Congressional policy against disruption of commerce expressed in § 10(*l*)."

> *Building and Construction Trades Council, supra* at 207 (footnote omitted).

■ It will be noted that under *Schauffler* and *Building and Construction Trades Council* the District Court has virtually no discretion in the issuance or denial of § 10(*l*) injunctions. If the Board's legal theory can be characterized as insubstantial and frivolous, the District Court may refuse to grant the injunction. If the Board's theory cannot be characterized as insubstantial and frivolous, the District Court *must* grant the injunction.

■ In making a factual determination in § 10(*l*) proceedings, the District Court merely determines that there is "reasonable cause to believe that the elements of an unfair labor practice are present", *Schauffler, supra,* at 187, of 292 F.2d and is not required to resolve disputed issues of fact, Kennedy v. Sheet Metal Workers International Association Local 108, 289 F.Supp. 65, 86, (C.D.Cal.1968).

Mindful of our limited role in § 10(*l*) proceedings, we will now turn to the merits of the petition.[1]

1. There has been some disagreement among the Circuits as to the appropriate standard to be applied by District Courts in the issuance or denial of injunctions under § 10(*l*) of the Act. All courts agree that the general standard is that the Board must have "reasonable cause" to believe that an unfair labor practice has occurred or may occur. Some courts appear to require an additional showing by the Board; others, including the Third Circuit in *Schauffler*, merely require that the Board's theory be substantial and not frivolous. A careful reading of the cases indicates that the apparent difference in standards may be one of rhetoric rather than substance. We believe that the ultimate rulings of the courts may be rationalized, inter se, given the factual situations presented on a case-by-case basis. In short, the holdings of the courts may be squared so as to create a pattern consistent with the thesis that injunctions granted under the looser standards would also have been issued under the stricter standards. See generally 2 Kheel Labor Law § 7.02 [14], and cases cited therein.

**2.** *The charge of an unfair labor practice under § 8(b)(7) of the Act.*

Section 8(b)(7)(C) of the Act provides in pertinent part as follows:

(b) It shall be an unfair labor practice for a labor organization or its agents—

\*    \*    \*    \*    \*    \*

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period \* \* \* not to exceed thirty days from the commencement of such picketing: \* \* \* *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

It is conceded by the Union that Local No. 492 is not currently certified as the representative of Lawrence's employees, and that picketing has continued for more than 30 days without the filing of a petition under § 9(c) of the Act.

The Union denies that the picketing is designed to achieve recognition or organization. On the contrary, it maintains that its sole object is to inform the public that Lawrence is not meeting area standards of employment.

The theory advanced by the Board is based upon the doctrine of Centralia Building & Construction Trades Council, 155 N.L.R.B. No. 80 (1965), enforced 124 U.S.App.D.C. 212, 363 F.2d 699 (1966).

*Centralia* stands for the proposition that picketing, although nominally within the protected classification of area standards publicity, notwithstanding the Union's express disclaimer of any goal of recognition or organization, may nevertheless violate § 8(b)(7)(C) under the facts and circumstances of a given case, if the Board can conclude that *an* object of the picketing is recognition or organization.

In *Centralia,* the union denied that its picketing was unlawful under § 8(b)(7)(C) of the Act, but admitted that an object of the picketing was to force the employer to sign a "Settlement Agreement" with the union, which contained provisions such as the following:

1. The employer was to pay its employees wages or fringe benefits equivalent to the total economic package being received by union members.

2. The employer was to raise or lower its wages and fringes as changes were negotiated in the total economic package being received by union members.

3. Union officials and accountants were permitted access to the employer's records.

4. Picketing would cease during the term of the agreement.

The employer refused to execute this agreement, and picketing continued.

The Board concluded that, under these facts, an object of the picketing was to achieve recognition. The Court of Appeals for the District of Columbia Circuit enforced the Board's order:

Here, however, the Board, taking account of all circumstances, adopted its trial examiner's findings that an object of the union's picketing of Pa-

cific was recognitional. The petitioner had commenced picketing of Pacific without making prior effort to determine what Pacific's labor standards were. It was uncontradicted that no representative of the petitioner had ever inquired about what wages or benefits were being paid to Pacific's employees.

The proposed contract would have bound Pacific to raise or lower its payments in wages and benefits whenever wage rates were to be raised or lowered under union agreements. Pacific would have been required to throw open its records as to such payments that monthly inspection might be made by petitioner's accountants.

The trial examiner and the Board concluded that the net effect of Pacific's entering upon the proposed agreement would have been to establish the petitioner as the negotiator of wage rates and benefits paid to Pacific's employees. The trial examiner and the Board thus determined that an object of the picketing was to force or require Pacific to recognize the petitioner as the representative of Pacific's employees.

*Centralia, supra,* 363 F.2d at 701 (footnote omitted).

In the instant case, the Board has offered uncontested evidence that a contract or agreement was drafted after extensive negotiations between the Union and Lawrence,[2] although never signed by Lawrence. Indeed, counsel for the Union, who represented the Local in these proceedings, took the laboring oar in preparing the draft and was responsible for including in the agreement the following salient provisions:

1. Lawrence was to agree to observe all the conditions of the collective bargaining agreement relative to carpenters and carpenter apprentices in effect between Local # 492 and Berks Constructor Associates, Inc., which agreement was attached to the contract as an exhibit (with the exception of the pension program and grievance procedure provided for in that document).

2. Work rules were established.

3. The union was to have access to the job site at reasonable times for inspection.

4. The union was to have the right to institute action on behalf of Lawrence employees to collect sums not paid, and Lawrence was to be liable for counsel fees and costs of such litigation.

5. A suit pending in the Court of Common Pleas of Berks County against the Union was to be withdrawn with prejudice by Lawrence.

6. Terms of the agreement were to be made known to Lawrence's employees.

7. Picketing was to cease during the term of the agreement.

In addition, the Board has offered evidence to establish that inquiry was not made by the Union prior to the commencement of picketing to determine the wages paid to Lawrence's employees.[3]

Based on this evidence offered by the Board, without contradiction by the Union, we are unable to say that the legal theory argued by the Board is insubstantial or frivolous. Since we are bound by the standard of *Schauffler* and *Building and Construction Trades Council,* we are compelled to grant the injunctive relief sought by the Board.

Without disputing the facts presented by the Board, the Union contends that the *Centralia* rationale is inapplicable to the present case because the draft agreement between the Union and Lawrence may have resulted from settlement negotiations conducted in connection with the suit filed in the Court of Common Pleas of Berks County, at the instigation of Judge Hess. While this fact, if supported by the evidence, may have some relevance when the Board ultimately makes

---

2. The contract was marked as Petitioner's Exhibit #2 at the hearing held on February 12, 1974.

3. Testimony of Richard H. Lawrence at the hearing held on February 12, 1974.

its determination on the merits, it is clearly not relevant to this motion for preliminary relief under § 10(*l*).

We are not called upon to decide the merits of the case, but merely to determine if the Board's theory is substantial rather than frivolous. Under this standard, the Board has met its burden.

Accordingly, we will grant the injunction sought by the Board, and enter the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Petitioner is Regional Director of the Fourth Region of the Board, an agency of the United States, and filed this petition for and on behalf of the Board.

2. On or about January 23, 1974, Thomas E. Waters, Jr., pursuant to the provisions of the Act, filed a charge with the Board, alleging that Local Union No. 492, United Brotherhood of Carpenters and Joiners of America (herein called respondent), a labor organization has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(7), subparagraph (C), of the Act.

3. The aforesaid charge was referred to the Regional Director of the Fourth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal offices at 100 Madison Avenue, Hyde Park, Reading, Pennsylvania, and at all times material herein, respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Richard H. Lawrence is an individual proprietor (herein called Lawrence) who is engaged in building construction. Lawrence annually purchases goods and services from outside the Commonwealth of Pennsylvania valued in excess of $50,000.00.

(d) Lawrence is presently engaged, as general contractor, in the construction of a library at the Berks County Campus of Penn State University located at Reading, Pennsylvania.

(e) Respondent is not currently certified as the collective bargaining representative of any of Lawrence's employees and at no time material herein has respondent been so certified.

(f) No charge has been filed with the Board under Section 8(a)(2) of the Act alleging that Lawrence has unlawfully recognized or assisted any labor organization.

(g) On or about May 21, 1973, Respondent commenced picketing Lawrence at the construction job site described in Findings of Fact 4(d), above.

(h) Since on or about July 24, 1973, respondent has been picketing Lawrence at the construction job site described in Findings of Fact 4(d), above.

(i) The aforesaid picketing has been conducted for more than thirty (30) days without the filing of a petition for a Board election under Section 9(c) of the Act.

(j) An object of respondent's picketing described in Findings of Fact 4(h) and (i) above, was and is to force or require Lawrence to recognize or bargain with respondent as the representative of his employees or to force or require Lawrence's employees to accept or select respondent as their collective bargaining representative notwithstanding that respondent is not currently certified as the representative of such employees.

(k) The acts and conduct of respondent set forth in Findings of Fact 4(h) through (j), above, occurring in connection with the operations of Lawrence, have a close, intimate, and substantial relation to trade, traffic and commerce among the several states and tend to

lead to, and do lead to, labor disputes burdening and obstructing commerce and the free flow of commerce.

5. It may fairly be anticipated that, unless enjoined, respondent will continue or repeat the acts and conduct set forth in Findings of Fact 4(h) through (k), above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding and, under Section 10($l$) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10($l$) of the Act.

(b) Lawrence is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Sections 8(b)(7), subparagraph (C), of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1 thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition of the acts and conduct set forth in Findings of Fact, 4(h) through 4(i), above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

An appropriate Order will be issued of even date with this Memorandum.