Thomas C. HENDRIX, Regional Director of the Seventeenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CONSTRUCTION LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, CONSTRUCTION LABORERS LOCAL 1140, Respondent.

Civ. No. 76–0–213.

United States District Court, D. Nebraska.

June 11, 1976.

David A. Nixon, Kansas City, Kan., for petitioner.

David D. Weinberg, Omaha, Neb., for respondent.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court on the petition instituted by the Regional Director of the Seventeenth Regional Office of the National Labor Relations Board (hereinafter referred to as the Board) on May 21, 1976, for and on behalf of the Board pursuant to the provisions of Section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(*l*) (hereinafter referred to as the Act), for an interlocutory injunction pending the final disposition of the matters involved herein, presently pending before the Board on charges, filed by the Glad Tidings Assembly Church, alleging that the Construction Laborers International Union of North America, AFL–CIO, Construction Laborers Local 1140 (hereinafter referred to as the respondent) has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(7)(C) of the Act.

A hearing was held before the Court on June 4, 1976, and briefs have been submitted. At the conclusion of the evidence presented by petitioner, it appeared that there is no dispute concerning the facts. Pursuant to Rule 52, F.R.Civ.P., the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Petitioner, Thomas C. Hendrix, the Regional Director of the Seventeenth Region of the Board, filed this petition for and on behalf of the Board, alleging that there exists reasonable cause to believe that respondent, Construction Laborers International Union of North America, AFL–CIO, Construction Laborers Local 1140, has engaged in, and is engaging in, acts and conduct in violation of Sections 8(b)(4)(i) and (ii)(B) and 8(b)(7)(C) of the Act. At the opening statement of counsel for petitioner, petitioner amended his petition with leave of Court to delete reliance upon Sections 8(b)(4)(i) and (ii)(B). Section 8(b)(7)(C) provides in relevant part as follows:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

.    .    .    .    .

(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing[.]

Jurisdiction of the Court is invoked pursuant to Section 10(*l*) of the Act, 29 U.S.C. § 160(*l*).

Lanco Corporation (hereinafter referred to as Lanco) is the general contractor on a construction project involving the enlargement and renovation of the Glad Tidings Assembly Church, located at 75th and Hickory Streets, in Omaha, Nebraska (hereinafter referred to as the Church project). Lanco is not organized by any labor organization and has never at any time recognized any labor organization as the collective bargaining representative of any of its employees.

Following the commencement of work on the project, Lanco received a letter, dated March 17, 1976, bearing the signature of Richard Otte, Business Representative of the Respondent. In this letter, the respondent stated in part as follows:

The purpose of this communication is to request your company to pay your employees who will be employed by you in the Douglas, Cass, Sarpy, Richardson, Nemaha, Otoe, the north half of Saunders, Washington, Dodge, Colfax, Burt, Cumings, Stanton, Madison, Thurston, Wayne, Pierce, Antelope, Dakota, Dixon, Cedar and Knox counties of Nebraska

area performing work in the Construction Labor Field, the minimum standards of wages, hours and working conditions established by this Union. *The undersigned Union is not requesting any of your employees into membership in our Union. Our sole and only interest in this request is to maintain minimum standards of wages, hours and working conditions for construction labor employees who will be employed by you in this area regardless of their union or non-union affiliation.* We want this specifically understood by your Company.

If you are desirous of complying with our request, we will furnish your company with minimum standards or wages, hour and working conditions that have been established by our Union for construction labor workers. On the other hand, if you do not contact us within a period of three days after receipt of this letter in answer to our request, our Union and your company will be in dispute concerning minimum standards established by our organization as to wages, hours and working conditions for workmen who will be employed by you in this area. (Emphasis supplied) [Exhibit 1].

Thereafter, Lanco did not accede to the respondent's demand and on or about March 22, 1976, the respondent placed a picket at the Church project. The picket carried a sign bearing the following legend:

Lanco Corp. does not pay Union wages and conditions.

Laborers Local 1140.

This dispute with the above named employer only.

The following additional facts are admitted in the pleadings or have been stipulated to during opening statements:

(a) The respondent is an unincorporated association and is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(b) At all times material herein, the respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) In the course and conduct of its business at Omaha, Nebraska, during the past calendar year, Lanco purchased goods and materials valued in excess of $50,000 directly from suppliers located outside the State of Nebraska. Lanco is an employer and a person engaged in commerce or in an industry affecting commerce.

(d) The respondent is not now and never has been, the certified and/or recognized collective bargaining representative of any unit of employees employed by Lanco.

(e) The respondent is not now and never has been designated by any unit of employees employed by Lanco as their representative for purposes of collective bargaining.

(f) The respondent has continued and is continuing the picketing of Lanco without a petition under Section 9(c) of the Act being filed within a reasonable period of time not to exceed 30 days from on or about March 22, 1976.

## CONCLUSIONS OF LAW

The Court has jurisdiction of the subject matter pursuant to Section 10(*l*) of the Act. A Section 10(*l*) injunction is interlocutory and only remains in force pending the final adjudication of the unfair labor charge by the Board. The applicable test for granting the injunction is stated in *Schauffler v. Local 1291, International Longshoremen Association*, 292 F.2d 182, 187 (3rd Cir. 1961):

The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present. Nor need the Board conclusively show the validity of the propositions of law underlying its charge but is required to demonstrate merely that the propositions of law which it has applied to the charges are substantial and not frivolous. *Retail, Wholesale & Department Store Union v. Rains,* 266 F.2d 503, 505–506 (5 Cir. 1919);

*Douds v. Milk Drivers & Dairy Employees Union,* 248 F.2d 534, 538 (2 Cir. 1957); *Dooley v. Highway Truck Drivers,* 182 F.Supp. 297, 301 (D.Del.1960).

■ The legal issue for the Court's determination is whether an object of the picketing is "forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative . . ." under the provisions of Section 8(b)(7) of the Act. It is clear that an object of the picketing was not to require the employees of Lanco to accept respondent as their representative, as this purpose was expressly disavowed in the letter of March 17. However, it is the opinion of the Court that an object of the picketing was to force or require Lanco to recognize and bargain with respondent as the representative of its employees.

Respondent contends that the purposes and objectives of picketing Lanco was to maintain minimum standards of wages, hours and conditions of employment established by the union and not to represent or secure as members of respondent any employee or employees of Lanco. The Court finds this argument unpersuasive. If Lanco acquiesced to the terms specified in respondent's letter encompassing all the working conditions and terms of employment, respondent would have acquired the full status of *de facto* collective bargaining representative for employees of Lanco. The disclaimer in the letter negates solely a showing of an organizational object, not a recognitional object. Respondent's letter manifestly embodies a design to require Lanco to recognize respondent as the collective bargaining agent of its employees, by specifying that Lanco must tailor the terms and conditions of employment it provides to its employees in accordance with those achieved by respondent in the context of collective bargaining with other employer-entities. If Lanco complied with the demand set forth in the letter, respondent would have arrogated preemptive control over the terms and conditions of employment of Lanco's employees, rendering any designation by those employees of any other labor organization as their collective bargaining representative a nullity in practical effect.

Petitioner relies heavily upon the Board's decisions in *Centralia Building and Construction Trades Council,* 155 N.L.R.B. 803, enf'd 124 U.S.App.D.C. 212, 363 F.2d 699 (1966), and *State-Mart Inc., d/b/a Giant Food,* 166 N.L.R.B. 818, enf'd 404 F.2d 855 (9th Cir. 1968). Particularly appropriate is the language of the Trial Examiner in *Centralia, supra:*

> With such an agreement in effect, very little would be left in the field of collective bargaining to a representative chosen by Pacific's employees and therefore the will and choice of employees when and if exerted with respect to a bargaining agent would be thwarted and nullified. I think [said the trial examiner] the freedom of employees to make their own choice in such matters cannot lawfully be foreclosed in this manner. Nor can the disclaimers in the letter accompanying the proposed agreement prevail against the intent and effect of the agreement itself. 363 F.2d at 701.

The cases relied upon by respondent are distinguishable. *Samoff v. Bldg. & Construction Trades Council,* 80 LRRM 3358 (E.D.Pa.1972), involved picketing by a charged labor organization which was a Council composed of delegates from various building trades craft unions and did not have among its functions the organization of any employees nor the acting as collective bargaining representative, and there the council did not ask the employer to do anything other than enter into an agreement that in the future it would not utilize any subcontractor on any aubsequent job that did not have a collective bargaining relationship with a craft union affiliated with the charged council. The court distinguished the *Centralia* case because of the relatively small effect that the subcontracting agreement would have on the ability of the employees to engage in normal bargain-

ing functions. *Id.* at 3365. In *Hoffman v. IATSE Local 611,* 81 LRRM 2759 (N.D.Cal. 1972), the picketing union concededly once had been the duly recognized collective bargaining representative and the court found no showing that that union did not still occupy that status and hence the dispute did not fall within the framework of Section 8(b)(7)(C). In *Hod Carriers Union,* 48 LRRM 1667 (N.L.R.B.1961), the issue for determination involved a case arising under Section 8(b)(4)(C)—as distinguished from, as here, a case arising under Section 8(b)(7)(C). In *Houston Bldg. & Construction Trades Council,* 49 LRRM 1757 (N.L.R.B.1962), the letter sent by the union which was respondent therein, preliminary to its engaging in picketing, was limited to a protest over substandard wages, as distinguished from the comprehensive demand set forth in the March 17 letter present in the instant case.

Congress has chosen to outlaw picketing which seeks to compel the employer to deal with a non-representative labor organization on the subjects which could substantially affect the working conditions of the employees. *Dallas Building and Construction Trades Council v. N. L. R. B.,* 130 U.S.App.D.C. 28, 396 F.2d 677 (1968); *Lane-Coos-Curry-Douglas Counties Bldg. & Construction Trades Council v. N. L. R. B.,* 415 F.2d 656 (9th Cir. 1969) (Carter, J. dissenting). This Court is not empowered to conclusively decide the merits of the legal contentions of the parties. The issue will ultimately be decided by the Board and, possibly, the appellate court. The Court concludes that there is reasonable cause to believe that a violation of the Act has been committed, as charged, and that injunctive relief is "just and proper." *See generally, N. L. R. B. v. Denver Building & Construction Trades Council,* 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1950); *Madden v. International Organization of Masters, Mates & Pilots,* 259 F.2d 312 (7th Cir.), *cert. denied* 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229 (1958).

The acts and conduct of the respondent occurring in connection with services to be rendered at the Church project have a close, intimate and substantial relationship to trade, traffic and commerce among the several states and tend to lead to, and do lead to, labor disputes burdening and obstructing commerce and the free flow of commerce. It may fairly be anticipated that, unless enjoined, the respondent will continue or repeat the acts and conduct set forth hereinabove or similar or like acts and conduct.

Accordingly, the Court finds that petitioner has reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act.

(b) Lanco is engaged in commerce within the meaning of Sections 2(6) and 2(7) of the Act.

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b)(7)(C) of the Act. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein pending before the Board, the respondent, by its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it, be enjoined and restrained from the commission, continuance or repetition of the picketing of Lanco for an unlawful objective or conduct.

An Order granting petitioner's motion for an injunction is filed contemporaneously herewith in accordance with this Memorandum Opinion.